Waters v. Universal Store Specialties Co., 196 Ill. App. 3.

on exception to the remark, was followed by an examination of the witness in regard to the matter adverted to, *held* not prejudicial where the fact stated by the court was not denied by defendant and was borne out by the record, for the reason that the remark was natural and that when defendant excepted the court may have supposed that counsel took issue with him as to the correctness of witness' testimony, and hence interrogated witness further, and also for the reason that such statement and examination was a just and reasonable exercise of the judicial function.

9. WITNESSES, § 178*—*when questions put to witness objectionable in form.* Questions to a witness containing a positive assertion rather than a query, and which are in the form of a contradiction of the witness, are objectionable.

---

# John F. Waters, Defendant in Error, v. Universal Store Specialties Company, Plaintiff in Error.

## Gen. No. 20,386. (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. JOHN K. PRINDIVILLE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed December 8, 1915.

## Statement of the Case.

Action by John F. Waters, plaintiff, against the Universal Store Specialties Company, a corporation, defendant, in the Municipal Court of Chicago, to recover on a contract of employment. To reverse a judgment for plaintiff for $215, defendant prosecutes this writ of error.

Plaintiff's cause of action is based on a written contract of employment with defendant wherein the latter agreed, among other things, to advance to plaintiff the sum of $50 per week for a period of one year. This contract is dated May 28, 1913, and plaintiff's claim is for nine weeks' advances, $450, less a credit of $235,

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number,

being moneys due defendant from customers, which moneys plaintiff had collected and retained.

While defendant in its affidavit of merits sets forth several defenses, yet upon the trial of the case the principal defense relied on was that plaintiff had not given a bond as required by the contract, but in lieu thereof had entered into a new contract of employment which superseded the written one.

The only evidence offered on behalf of the plaintiff was the contract itself, and plaintiff's testimony that he had not received advances from defendant for a period of nine weeks, and that there was due him under said contract for advances the sum of $450; that he had collected moneys due defendant to the extent of $235, for which he had given it credit, leaving a balance due of $215.

It appeared, on examination of plaintiff under section 33 of the Municipal Court Act (J. & A. ¶ 3345), and from the testimony of H. E. Dugan, district sales manager of the defendant, that plaintiff had received in advances more money than was earned by him in commissions under the contract of employment; that shortly after October 31, 1913, in a conversation with plaintiff, Dugan read to plaintiff a letter which he had received from defendant, which letter was as follows:

"With regard to Mr. Waters, his account has been speedily going behind, as you know, and the statement for the last week shows a net overdraft, or difference between overdraft and prospective, of $460.98. We wish you would have a talk with Mr. Waters and endeavor to show him that we cannot possibly keep remitting him $50 per week unless he does business to warrant our doing so. When the writer saw him, and in his correspondence about September 1st, he told of a great many sales that he surely could close during September, or soon, and these sales have not matured. If they had, no doubt his account would be in different shape. If he will consent to having his remittance reduced to an amount that he can earn, we will con-

tinue with him, but if not, we shall certainly have to cut him off the remittance list. In his application he states that he can give a personal bond, signed by two owners of real estate. If he can furnish such a bond that will protect us against loss by making him the advances that we have agreed to make against his commissions, we will be willing to go along with him, but we cannot take a chance of losing any money on his account.''

That at said conversation he requested plaintiff to furnish a bond as required under section 9 of the contract and in accordance with the letter above quoted. Plaintiff testified that Dugan stated to him that the company might want him to give a bond.

Dugan testified that plaintiff stated he would not give a bond; that upon the refusal of plaintiff to give a bond, he informed plaintiff that defendant would make no further advances to him, but that if he wished to continue selling goods on the same commission, defendant would advance him fifty per cent. on commissions earned, and apply the remaining fifty per cent. on the indebtedness due defendant; that plaintiff stated that he was satisfied but that he wanted him (Dugan) to write defendant a letter for him, asking the company to advance sixty-five per cent. of his earned commissions, and apply the remainder, thirty-five per cent., on the indebtedness due from him to the defendant.

Plaintiff did not deny that these terms were discussed, but insisted that he refused to accept the proposition; admitting, however, that he asked Dugan to write defendant a letter requesting that he be allowed to draw sixty-five per cent. instead of only fifty per cent. of his earned commissions.

The testimony further disclosed that thereafter plaintiff sent in two orders on which his commission amounted to $96.26; that shortly thereafter he telegraphed defendant as follows:

''No sinews of war, commissions last week $96.''

That after sending this telegram, he received a check

from Dugan for $48.13, exactly fifty per cent. of the commissions earned by him; that this was the last business transaction plaintiff reported to the defendant. The evidence further disclosed that on November 14, 1913, plaintiff received the following letter in response to one he had written defendant on the 12th:

"I have received your personal letter of the 12th inst., and as before you receive this you will have received the remittance sent you yesterday, no doubt financial matters will be all satisfactory. I believe that you may possibly work a little harder on a straight commission basis, and if you do, I feel sure that you will get in enough orders so that you will make more money than you did on the basis of a regular weekly remittance. I appreciate the difficulties you have had on account of competition you have had, but it is no worse in Chicago than it is in New York and many other sections, and so long as we have so many superior features on our machines and the right sort of salesmen to present these features to the merchants, I am convinced that we will get our share of the business. I suppose the company cannot afford to pay more than its regular percentage for getting business, and naturally a badly overdrawn account is discouraging here, and calls for some action to head off a possible loss."

Upon this evidence the court found the issues for the plaintiff.

WILLIAM J. DILLON, for plaintiff in error.

JAMES J. KELLY, for defendant in error.

MR. JUSTICE PAM delivered the opinion of the court.

## Abstract of the Decision.

CONTRACTS, § 385*—*when evidence insufficient to establish existence of contract sued on.* In an action to recover on a written contract whereby defendant agreed to employ plaintiff, evidence examined and judgment for plaintiff *held* not sustained by the evidence, it

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

appearing therefrom that the contract sued on had been annulled by consent of both parties, and a new arrangement on different terms substituted in regard to the subject-matter of such contract, to which plaintiff had assented.

## Marjorie Fairfield, Appellee, v. Union Life Insurance Company, Appellant.

### Gen. No. 20,966.

1.   INSURANCE, § 868*—*when falsity of answers in application must be pleaded and proved.*   A condition in a policy of life insurance that the policy "shall not take effect until the first premium has actually been paid to and accepted by the company, and the policy actually delivered to and accepted by the insured while in good health," is a matter of defense and not a condition precedent to be averred and proved in order to maintain an action on the policy, so that where the defense is grounded on the falsity of answers made in an application which is made part of the policy, such falsity, to be available in defense, must be averred and proved by defendant, whether such condition in the policy be a representation or a warranty.

2.   INSURANCE, § 854*—*when provision in application requiring good health and acceptance of premium not condition precedent.*   A condition in an application for a policy of life insurance for verifying the truth of the answers therein made by the applicant and providing that the policy shall not take effect until the first premium is accepted by the company, and the policy delivered to insured "while in good health," is intended to safeguard insurer against the contingency that in the interim between the acceptance of the risk and the delivery of the policy insured's health may become impaired, hence such a condition has no application where the contingency guarded against never happened.

3.   INSURANCE, § 763*—*how incontestable clause should be construed.*   Provisions in policies of life insurance that after a named time the policy in question shall be incontestable are reasonable and must be strictly construed against insurer, as such provisions inure to the benefit of insured and are intended to induce persons to become policy holders.

4.   INSURANCE, § 763*—*incontestable clause as waiver of avoidance on other grounds.*   A provision in a policy of life insurance that

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.